IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THEODORE E. THORNTON, SR.        :

                                 :

v.                                     Civil Action WMN-07-1555

                                 :

BALTIMORE CITY BOARD OF SCHOOL   :
     COMMISSIONERS, et al.

MEMORANDUM

Before the Court is Defendants' Motion to Dismiss.  Paper
No. 3.  The motion is fully briefed.  Upon review of the
pleadings and the applicable case law, the Court determines that
no hearing is necessary, Local Rule 105.6, and that the motion
should be granted in part and denied in part.

I. FACTUAL AND PROCEDURAL BACKGROUND

The facts as alleged in the Complaint are as follows.  In
2005, Plaintiff applied for the position of Human Relations
Officer for Defendant Baltimore City Board of School
Commissioners (BCBSC).[1]  Plaintiff had previously held this same
position from 1999 until 2001, when he voluntarily resigned.
Although qualified for the position, he was neither interviewed
nor hired.  Plaintiff alleges that Defendants Jeff Grotsky,
William Boden, and George Duque, all officers or employees of
BCBSC, acted together to fill the Human Relations Officer

_____

[1] In the Complaint, Plaintiff identified this defendant as
the "Baltimore City Public School System."  The proper name for
this defendant is the "Baltimore City Board of School
Commissioners."  Md. Code Ann., Educ. § 4-303.

position and further alleges that, in doing so, they discriminated against him on the basis of his race and age.  At the time of the hiring decision, Plaintiff, an African American, was 67 years old.  The individual hired for the position was a white individual, 51 years old, with significantly less relevant experience.

In Count I the Complaint, Plaintiff asserts that BCBSC violated Title VII of Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA). In Count II, Plaintiff asserts a claim under 42 U.S.C. § 1983 against BCBSC, Grotsky, Boden, and Duque.  Count III asserts a claim of civil conspiracy to discriminate under 42 U.S.C. § 1985 against the three individual defendants.  Finally, Count IV alleges that all defendants violated 42 U.S.C. § 1981's proscription against race discrimination in the formation of contracts.

Pursuant to Rule 12(b)(6), Defendants have moved to dismiss the Complaint, in its entirety, on the following grounds:

(1) by resigning his position in 1999, Plaintiff "waived any right to be considered for re-employment to the same position." Mot. at 2;

(2) Plaintiff's ADEA claim fails because the person hired for the position was not from outside of the protected class;

(3) Plaintiff's § 1985 claim against the individual

defendants fails under the doctrine of "intra-corporate immunity;" and

(4) BCBSC has Eleventh Amendment immunity from the claims asserted in Counts I, II, and IV.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

When the legal sufficiency of the complaint is challenged under a Rule 12(b)(6) motion, the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325 (4th Cir. 2001); see also Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. Venkatraman, 417 F.3d at 420; Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering a motion to dismiss, however, the court "need not accept as true unwarranted inferences, unreasonable conclusions,

or arguments" nor "the legal conclusions drawn from the facts."
Eastern Shore Mkts., Inc., 213 F.3d at 180; see also Sensormatic
Sec. Corp. v. Sensormatic Elecs. Corp., 329 F. Supp. 2d 574, 578
(D. Md. 2004).

**III. DISCUSSION**

The Court will address Defendants' arguments in reverse
order.

A. Eleventh Amendment Immunity of Defendant BCBSC

It is well established that state agencies and state
instrumentalities are entitled to sovereign immunity from suits
brought by individuals in federal court, unless the suit is
brought pursuant to a statute containing a valid abrogation of
sovereign immunity. Regents of the Univ. of California v. Doe,
519 U.S. 425, 429 (1997). It is also well established that
neither § 1981 nor § 1983 contain a valid abrogation of sovereign
immunity. See Khan v. Maryland, 903 F. Supp. 881 (D. Md. 1995)
(holding state agency had Eleventh Amendment immunity from § 1981
suit); Quern v. Jordan, 440 U.S. 332, 345 (1979) ("§ 1983 does
not explicitly and by clear language indicate on its face an
intent to sweep away the immunity of the States"). The Supreme
Court has also held that the ADEA did not validly abrogate the
immunity of states from suit by private individuals. Kimel v.
Florida Bd. of Regents, 528 U.S. 62, 91 (2000).[2]

_____

[2] While Defendants assert that the Court should dismiss all
of Count I on the ground of sovereign immunity, the Court notes
that, in addition to the ADEA claim, Count I also asserts a
violation of Title VII. Defendants make no argument, nor could

4

While states are entitled to the Eleventh Amendment immunity, that immunity "does not extend to counties and similar municipal corporations." Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).  The availability of immunity for BCBSC, therefore, turns on whether BCBSC "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." Id.  This question is answered by looking at several factors.

"The principal factor upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury." Cash v. Granville County Bd. of Educ., 242 F.3d 219, 223 (4th Cir. 2001) (citing Regents, 519 U.S. at 430).  If the State treasury would be called upon to pay a judgment against the governmental entity, "then Eleventh Amendment immunity applies to that entity, and consideration of any other factor becomes unnecessary." Id. (citing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994)).  If the State treasury would not be called upon to satisfy the judgment, that fact weighs against finding that entity immune.

That is not the end of the inquiry, however, as "the entity may still enjoy sovereign immunity if the judgment would

---

they, that Title VII does not contain a valid abrogation of immunity.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).

adversely affect the dignity of the State as a sovereign and as one of the United States." Cash, 242 F.3d at 224.  To make that determination, courts look at the relationship between the State and the entity in question, examining the following factors:

> 1) the degree of control that the State exercises over the entity or the degree of autonomy from the State that the entity enjoys;
>
> 2) the scope of the entity's concerns - whether local or statewide - with which the entity is involved; and
>
> 3) the manner in which State law treats the entity.

Id.

More than thirty years ago, Judge Joseph H. Young of this Court employed a similar analysis to determine the status for sovereign immunity purposes of BCBSC's predecessor, the Board of School Commissioners of Baltimore City (the Board), Patterson v. Ramsey, 413 F. Supp. 523, 530 (D. Md. 1976).  Judge Young observed that the Board has "a somewhat hybrid nature[:] in some respects it is directly responsible to the State Department of Education; in others it is a creature of the City of Baltimore." Id.  Noting that the then applicable Education article of the Maryland Code included one section governing the boards of education for Maryland's counties and a separate section governing the City's board and highlighting the differences therein, he opined that the Maryland Code "reveals a plan involving close supervision of the county boards and delegation of authority to Baltimore City regarding its school system."  Id.

6

While acknowledging that the Board "receives substantial
financial assistance from the State," he also noted that any
judgment against the Board would be satisfied, first from the
insurance the Board was required to carry, and then against the
Mayor and City Council of Baltimore.  Id.  Judge Young ultimately
concluded that BCBSC's predecessor was "an agency of the City
rather than an alter ego of the State" and, as such, "c[ould] be
sued without offense to the Eleventh Amendment."  Id.

Although this court has not revisited, since Patterson, the
issue of whether the board governing public schools in the City
of Baltimore is an arm of the state, it has held, with few
exceptions, that the county boards of education of Maryland are
state agencies and are therefore immune under the Eleventh
Amendment from suits for monetary damages.  See Child Evangelism
Fellowship of Md., Inc. v. Montgomery County Pub. Sch., 368 F.
Supp. 2d 416 (D. Md. 2005); McNulty v. Board of Educ. of Calvert
County, Civ. No. 03-2520, 2004 WL 1554401, *4 (D. Md. July 8,
2004); Lewis v. Bd. of Educ. of Talbot County, 262 F. Supp. 2d
608, 614 (D. Md. 2003); Biggs v. Bd. of Educ. of Cecil County,
229 F. Supp. 2d 437, 444 (D. Md. 2002); Adams v. Calvert County
Pub. Sch., 201 F. Supp. 2d 516, 521 (D. Md. 2002); Rosenfeld v.
Montgomery County Pub. Sch., 41 F. Supp. 2d 581, 586 (D. Md.
1999); Jones v. Frederick County Bd. of Educ., 689 F. Supp. 535,
538 (D. Md. 1988); but see Scott v. Bd. of Educ. of Harford Co.,
Civ No. 76-1513, 1979 WL 15339 (D. Md. Jan. 3, 1979) (concluding,
despite "the State's more comprehensive regulation of county

7

school boards," that Harford County's board of education was not a state agency and not protected by the Eleventh Amendment). Maryland state courts have also concluded that county school boards are State agencies.  See Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ., 747 A.2d 625, 629 (Md. 2000) ("Although in terms of their composition, jurisdiction, funding, and focus, they clearly have a local flavor, the county school boards have consistently been regarded as State, rather than county, agencies.").  Relying on this body of case law holding that county boards enjoy the sovereign immunity of the State, Defendants argue that not extending the same protection to the Baltimore City counterpart would be "anomalous."  Mot. at 12.

Plaintiff's opposition essentially skirts the entire issue. He argues that it would be inappropriate to resolve the question of BCBSC's entitlement to sovereign immunity on a motion to dismiss because that question "would require consideration of facts beyond the specific allegations alleged in the Complaint." Opp. at 15 (emphasis in original).  The Court notes, however, that the question of sovereign immunity is typically resolved on a motion to dismiss.  See Child Evangelism Fellowship (resolving on motion to dismiss); Lewis (resolving issue on motion to dismiss, or in the alternative, for summary judgment, without converting motion to one for summary judgment); Biggs (same); Rosenfeld (resolving on motion to dismiss).  This is appropriate because the facts upon which the determination is made are facts established, not by case-specific factual development, but by

8

statute.

While Plaintiff's opposition misses the mark, the Court will, nonetheless, deny Defendants' motion as to this issue. Just as it was when Judge Young issued the <u>Patterson</u> decision, Baltimore City is treated differently in the Maryland Code than the Boards of Education of Maryland's counties.  <u>See</u> Md. Code Ann., Educ. §§ 4-301 to 4-319 (separate subtitle addressing Baltimore City schools).  Thus, decisions addressing the sovereign immunity of other boards of education are not necessarily determinative.  Although the Code concerning Baltimore City schools has changed, somewhat, since <u>Patterson</u> was decided, it still contains some of the same types of provisions upon which Judge Young based his decision.  Unlike the members of the county boards which are appointed by Maryland's governor, <u>id.</u> § 3-108, BCBSC's members are jointly appointed by the Governor and the Mayor of Baltimore City.  <u>Id.</u> § 3-108.1.  Significantly, BCBSC has the authority to issue bonds for the purpose of financing its projects.  <u>Id.</u> § 4-306.2.  The power of a school board to independently raise funds through the issuance of bonds is one factor to which courts have looked when concluding that a local school board is "more like a county or city than it is like an arm of the state."  <u>Mt. Healthy</u>, 429 U.S. at 280.  Most significant in the Court's view, however, is a provision in the statute regarding the BCBSC that neither side addressed, subsection 4-303(d)(4).  That provision states plainly that "[<u>BCBSC] may not be deemed an agency of the State.</u>"  Md. Code

Ann., Educ. § 4-303(d)(4) (emphasis added).

This Court also notes that the factor that the Fourth Circuit has deemed to be the principal factor, _i.e._, whether a judgment against the governmental entity would have to be paid from the State's treasury, does not, as Defendants claim, favor a finding of sovereign immunity.  In arguing that this factor does, Defendants observe that, because the State provides the "lion's share of the funding for the Board, [] therefore, any judgment would be paid primarily from State funds."  Mot. at 11.  That funds used to satisfy a judgment may have originally come from the state, however, is not the concern reflected in that factor. The issue is whether a judgment against the entity would be paid directly from the state treasury, thus creating a new obligation on the part of the state.

In all of the county board cases relied upon by Defendants, the boards of education in question received significant funding from the state and yet, in each of those decisions, the court decided the sovereign immunity question not on the "state treasury" factor, but instead, on the three "sovereign dignity" factors.  See, e.g., Lewis, 262 F. Supp. 2d at 612-13 (noting that defendants did not dispute the fact "that a judgment in plaintiff's favor would not have a _direct_ impact upon the state treasury.") (emphasis added); Biggs, 229 F. Supp. 2d at 444 (while acknowledging that "[t]he state appropriates substantial funds to support the county boards," concluding that the judgment would not be "_directly_ paid from the state coffers") (emphasis

10

added).  Here, Defendants have identified no state law that would either compel or even allow a judgment against BCBSC to be enforced against the State.  See generally Cash, 242 F.3d at 223-24 (discussing the "state treasury" factor).

While Defendants are correct that the conclusion that BCBSC is not entitled to sovereign immunity leads to a somewhat anomalous treatment of BCBSC as compared to other county boards, this anomalous treatment of a Baltimore City governmental entity is not without precedent in Maryland law.  This Court has routinely held that county sheriffs and deputies are state officers for the purposes of Eleventh Amendment immunity.  Gray v. Maryland, 228 F. Supp. 2d 628, 640 (D. Md. 2002); Levinson-Roth v. Parries, 872 F. Supp. 1439, 1447 (D. Md. 1995).  In contrast, this Court has also held that the Baltimore City Police Department, while a state agency for some purposes, "is not entitled to Eleventh Amendment sovereign immunity because it 'is too interconnected with the government of the City.'" Chin v. City of Baltimore, 241 F. Supp. 2d 546 (D. Md. 2003); see also Franklin v. Clark, 454 F. Supp. 2d 356, 362 (D. Md. 2006). Likewise, the Court finds that BCBSC is also too interconnected with the government of the City to be an alter ego of the State.

B. Intra-corporate Immunity

Defendants next argue that Plaintiff's conspiracy claim under § 1985 must be dismissed under the doctrine of intra-corporate immunity.  This doctrine derives from two principles:

(1) the principle that, in order to state a claim for conspiracy, it must be alleged that two or more persons or entities were involved; and (2) the principle that the acts of a corporate agent are deemed to be the acts of the corporation itself.  See Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985).  Because the three individual Defendants named in this action are alleged to be agents of BCBSC, Compl. at ¶¶ 5-7, they constitute, with BCBSC, a single legal entity which, by definition, cannot conspire with itself.  See Lewin v. Cooke, 28 F. App'x 186 (4th Cir. 2002) (affirming dismissal of § 1985 claim against college and several college officials under the intra-corporate immunity doctrine).

The Fourth Circuit has noted the existence of two limited exceptions to the intra-corporate immunity doctrine.  The first is where a corporate officer "has an independent personal stake in achieving the corporation's illegal objectives." Greenville Pub. Co. v. Daily Reflector, Inc., 496 F.2d 391, 399 (4th Cir. 1974).  The second is where the acts of the agents were "unauthorized." Buschi, 775 F.2d at 1252-52 (citing Hodgin v. Jefferson, 447 F. Supp. 804 (D. Md. 1978)).  Plaintiff appears to be invoking the second exception, arguing that "[w]hile these individual Defendants were in a position to manipulate the selection process by virtue of the office each held with Defendant [BCBSC], the Complaint makes no allegation that the corporate Defendant so authorized their manipulation of the

selection process."  Opp. at 13.

To take advantage of this second exception, however, "plaintiff must [] allege that [the corporate employees] acted other than in the normal course of their corporate duties." Buschi, 775 F.2d at 1252.  The Complaint contains no such allegations and, in fact, the allegations in the Complaint undermine any such inference.  The Complaint makes clear that the individual Defendants were charged by BCBSC to solicit applications, interview, and hire BCBSC's Human Resources Officer.  Compl. ¶¶ 14-22.  That Plaintiff alleges that, in performing this assignment, the individual Defendants acted unlawfully does not implicate the "outside the scope of authority" exception.  As one of our sister courts observed, "the [ultra vires] exception would not apply [] because the acts of the putative conspirators all were taken, if at all, within the scope of their authority [] even if, as the plaintiffs claim, those acts were unlawful or contrary to [their employer's] policies against discrimination.  Indeed, [] the exception is susceptible of swallowing the rule because if every discriminatory act were held to be outside the scope of a corporate employee's authority, most discrimination claims would be conspiracy claims too because, in most instances, more than one actor is involved in corporate employment decisions."  Saleh v. Univ. of Virginia, Civ. No. 97-460, 1999 WL 34798179 (E.D. Va. Feb. 25, 1999).

The Court will dismiss Count III.

13

C. Age Discrimination Claim

As noted above, the individual hired in the position for which Plaintiff applied was 51 years old.  Plaintiff at that time was 67 years old.  Defendants argue that Plaintiff's ADEA claim must be dismissed because the person hired was in the same age class as Plaintiff.

This same argument was soundly rejected by the Supreme Court in O'Conner v. Consolidated Coin Caterers Corp., 517 US. 308 (1996).  In O'Conner, the plaintiff, at age 56, was fired and replaced by an individual who was 40.  The district court dismissed the plaintiff's ADEA claim concluding that, to state a prima facie case of age discrimination, the plaintiff must establish that he was replaced by someone outside of the protected class.[3]  The Fourth Circuit affirmed that decision, but the Supreme Court reversed.  The Supreme Court held that "the ADEA prohibits discrimination on the basis of age and not class membership," and "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."  517 U.S. at 313.

One could infer from the O'Connor decision that the 16 year difference present in that case was adequate to create an inference that the employment decision was unlawfully based upon

---

[3] The ADEA limits its protections to individuals who are at least 40 years of age.  29 U.S.C. § 631.

14

age.  The same 16 year age difference is present here.  As
Defendants' primary argument for dismissal of the ADEA claim is
one rejected by the Supreme Court, the Court will deny this
aspect of Defendants' motion.

### D. "Waiver" of Right To Be Considered for Re-Employment

Defendants boldly declare that "[i]t is fundamental that one
cannot voluntarily resign a position and then complain that he or
she was not given a fair opportunity to apply for the opening"
and that "[t]he Plaintiff waived any right to complain about the
selection of a replacement when he resigned."  Mot. at 6.
Defendants provide no authority for this "fundamental" principle,
nor is this Court aware of any support for this proposition in
law or in logic.  While facts about an applicant's previous
employment with the employer or the circumstances surrounding his
departure might give rise to some legitimate non-discriminatory
reason to not rehire that individual, none of those facts are
contained in the Complaint.  The mere fact that an individual had
once held the position but resigned four years previous is not a
legitimate reason to not consider reemploying that individual.

## IV. CONCLUSION

For the above stated reasons, the Court will dismiss Count
III of the Complaint.  Defendants' motion to dismiss will be
denied as to all other claims.

_____/s/_____
William M. Nickerson
Senior United States District Judge

Dated: November 13, 2007